**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION**

KIRK GEE
ADC # 140343                                                                                              PLAINTIFF

V.                                              4:07CV01144 JLH/HDY

CHAMBERS *et al.*                                                                                    DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Court Chief Judge J. Leon Holmes.  Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District
        Judge (if such a hearing is granted) was not offered at the

>
> hearing before the Magistrate Judge.
>
> 3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

Plaintiff, a prisoner now housed at the Grimes Unit of the Arkansas Department of Correction, filed this lawsuit *pro se* pursuant to 42 U.S.C. § 1983, alleging various claims related to his pre-trial detention at the Faulkner County jail. Defendants have filed a Motion for Summary Judgment (docket entry #53), supported by a Brief (docket entry #54) and Statement of Facts (docket entry 55), as required by Local Rule 56.1. Plaintiff sought, and received, an extension of time in which to submit a response to the pending motion (docket entry #59) but the time for filing has since elapsed and no responsive pleading has been received.

Under the circumstances, the case is appropriate for dismissal for failure to prosecute or otherwise comply with Local Rule 5.5(c)(2), which provides that if any communication from the Court to a *pro se* litigant is not responded to within thirty days, the case may be dismissed without

prejudice. The Defendants have shown, however, that they are entitled to a decision in their favor on the merits of their motion; accordingly, the following recommends that the Motion for Summary Judgment be granted and Plaintiff's claims be dismissed with prejudice.

### **I. Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In reviewing a motion for summary judgment, the Court should view the facts in a light most favorable to the non-moving party and give the nonmoving party the benefit of any inferences that can logically be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.1983). Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy." *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994)(quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id*. Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether

it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the nonmoving party fails to provide a statement of facts with citations to the record, that party fails to create a genuine issue of material fact. E.D. Ark. L.R. 56.1(c)("All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ").

## II. Background

In his Complaint (docket entry #2), Amended Complaint (docket entry #14), and Second Amended Complaint (docket entry #19), Plaintiff stated that he was a diabetic but was denied medical care and an appropriate diet for his condition. He also alleged that the Defendants' policy of withdrawing bed mats during the day caused him to suffer leg injuries; his mail was "tampered" with; his bond was unreasonably high; he was not adequately protected from an assault by unspecified person or persons; the food quantities were inadequate; the facilities were unclean; and he was denied access to a law library.

Plaintiff did not file a responsive pleading, nor respond to the Defendants' statement of material facts or file his own statement of material facts. Thus, the Court accepts as true all of the facts stated in Defendants' Statement of Material Facts (docket entry #55), and those relevant portions are set forth below. Due to the length of the Defendants' three exhibits and the limitations of the electronic filing system, the attachments to docket entry number 55 are cited as they appear in CM/ECF, as eight individual subsections, as well as with the Defendants' exhibit numbers:

    1. Plaintiff was booked into the Faulkner County Jail on March 26, 2007. *See* DE #55-2, p. 1/19, Exhibit 1, Arrest/Booking.

2.  A bench warrant was issued for Plaintiff and his probation was revoked on March 28, 2007. *See* DE # 55-2, pp. 3/19, 6-7/19, Exhibit 1, Arrest/Booking.

3.  At the time of intake, Plaintiff completed a medical questionnaire and indicated he was a diabetic. *See* DE # 55-3, p. 2/30, Exhibit 2, Jail Medical File.

4.  At his arraignment on March 28, 2007, Plaintiff was appointed a public defender and bond was set at $500,000.00. *See* DE # 55-2, p. 8/19, Exhibit 1, Arrest/Booking.

5.  Plaintiff submitted a grievance on March 29, 2007, for a street address and to have his blood sugar checked. Plaintiff also inquired as to his inmate commissary balance. Officer Pickard (not a named Defendant) responded that money had been "dropped" into Plaintiff's account on March 26th, provided the requested address, and advised Plaintiff to submit a medical request regarding his diabetes and blood sugar checks. *See* DE # 55-8, p. 1/17, Exhibit 3, Requests/Grievances.

6.  Plaintiff requested medical treatment on April 3, 2007 and was seen by Defendant Nurse Chambers, who noted Plaintiff complained of being diabetic and needed his sugar checked. Plaintiff stated he had previously taken oral medication to control his blood sugar. Nurse Chambers noted Plaintiff's sugar was slightly above normal after eating lunch. Plaintiff was placed on blood sugar checks for seven days to be reviewed. *See* DE # 55-3, p. 4/30, Exhibit 2, Jail Medical File.

7.  Plaintiff complained on April 8, 2007, that he had a problem with his feet and was advised to fill out a medical request. *See* DE # 55-8, p. 3/17, Exhibit 3, Requests/Grievances.

8.  Plaintiff requested medical treatment on April 10, 2007, for dry, painful feet and was given athlete's foot cream by Defendant Nurse Chambers. *See* DE #55-3, pp. 5-6/30, Exhibit 2, Jail Medical File.

9. Plaintiff complained on April 11, 2007 that he would like to have some white socks brought up to him and his request was okayed by Defendant Sgt. Porter. *See* DE # 55-8, p. 4/17, Exhibit 3, Requests/Grievances.

10. On April 13, 2007, Plaintiff requested athlete's foot cream and it was provided to him by Defendant Nurse Chambers. *See* DE #55-3, pp. 7-8/30, Exhibit 2, Jail Medical File.

11. Plaintiff requested another tube of athlete's foot cream on April 17, 2007 and was given over-the-counter antifungal medication and instructed on its use. *See* DE #55-3, p. 9/30, Exhibit 2, Jail Medical File.

12. Plaintiff requested athlete's foot cream again on April 25, 2007 and the nurse approved Plaintiff for one tube of athlete's foot cream. *See* DE #55-3, pp. 10-11/30 Exhibit 2, Jail Medical File.

13. Plaintiff requested athlete's foot cream on May 1, 2007 and this was provided to him along with Vaseline. Defendant Nurse Chambers noted that Plaintiff would continue to be monitored and evaluated for his condition. *See* DE #55-3, pp. 12-13/30, Exhibit 2, Jail Medical File.

14. Plaintiff requested treatment for athlete's foot on May 14, 2007 and Defendant Nurse Chambers again provided over-the-counter athlete's foot cream. *See* DE #55-3, pp. 14-15/30, Exhibit 2, Jail Medical File.

15. Plaintiff requested athlete's foot cream on May 22, 2007 and Defendant Nurse Chambers noted "c/o athlete's foot. Requesting more athlete's foot cream. Pt. has had athlete's foot in the past. But pt. has dry feet at this time. Pt. may also have family provide OTC athlete's foot cream if possible." Nurse Chambers provided Vaseline to Plaintiff for dry skin. *See* DE #55-3, pp. 16-17/30, Exhibit 2, Jail Medical File.

16. Plaintiff complained that Vaseline was not working for his athlete's foot and requested athlete's foot cream. Defendant Nurse Chambers' notes from June 1, 2007, indicate that Plaintiff had cracking, dry skin on his feet and between the toes of both feet. Nurse Chambers prescribed athlete's foot cream. *See* DE #55-3, pp. 18-19/30, Exhibit 2, Jail Medical File.

17.  Plaintiff continued to request athlete's foot cream on June 12, 2007 and Defendant Nurse Chambers noted that Plaintiff had been given several tubes of athlete's foot cream and was not getting any better. *See* DE #55-3, pp. 20-21/30 Exhibit 2, Medical Requests.

18.  Plaintiff was seen by the doctor on June 13, 2007 and was to "start metform"[sic].[1] *See* DE #55-3, p. 22/30, Exhibit 2, Jail Medical File.

19.  Plaintiff complained of athlete's foot on June 25, 2007 and was given athlete's foot cream and hydrocortisone cream. *See* DE #55-3, pp. 23-24/30 Exhibit 2, Jail Medical File.

20.  Plaintiff requested additional athlete's foot cream on July 2, 2007 and was given over-the-counter cream as directed by Dr. Steward and a salt water rinse for his teeth. *See* DE #55-3, pp. 25-26/30, Exhibit 2, Jail Medical File.

21.  Plaintiff complained on July 10, 2007, of low back pain and was given naproxen. Plaintiff stated he had been in an accident when he was 21 and was injured and received treatment in Michigan. A urinalysis was conducted and Plaintiff was noted to have a normal ambulatory gait. *See* DE #55-3, pp. 27-28/30 Exhibit 2, Jail Medical File.

22. Defendant Nurse Chambers requested Plaintiff's medical records from Mercy Memorial

---

[1] According to the PHYSICIANS' DESK REFERENCE, "metformin" is the generic name for Glucophage and several other oral diabetes medications that help control blood sugar levels. Dr. Stewart's chart notes actually appear to read, "Start metformin $\div$ 500 mg. [unclear] if RBS [random blood sugar] > 140 mg/dL."

Hospital in Michigan on July 11, 2007. *See* DE # 55-6, p. 4/30, Exhibit 2, Jail Medical File.

23. On July 16, 2007, Plaintiff requested additional hydrocortisone cream for athlete's foot. Per Defendant Nurse Chambers' notes, this was authorized on July 17th. *See* DE #55-3, pp. 29-30/30, Exhibit 2, Jail Medical File.

24. Plaintiff's medical records from Mercy Memorial Hospital in Monroe, Michigan were received by Nurse Chambers on July 17, 2007. *See* DE #55-6, pp. 4-14/30, Exhibit 2, Jail Medical File.

25. On July 17, 2007, Plaintiff complained that the medication given to him for his back was not helping. Nurse Chambers responded that Plaintiff could purchase over the counter medication for pain and noted that plaintiff also requested day-time use of a mat. *See* DE #55-4, p. 2/31, Exhibit 2, Jail Medical File.

26. On July 24, 2007, Plaintiff continued to complain of lower back pain and was given naproxen, 500 mg., per Dr. Stewart. *See* DE #55-4, pp. 3-4,6/31, Exhibit 2, Jail Medical File.

27. On August 6, 2007, Plaintiff complained of back pain and Defendant Nurse Chambers noted Plaintiff would need an evaluation by Dr. Stewart. *See* DE #55-4, pp. 5-7/31, Exhibit 2, Jail Medical File.

28. Dr. Stewart examined Plaintiff on August 9, 2007, and prescribed ibuprofen 800 mg. *See* DE #55-4, p. 7/31, Exhibit 2, Jail Medical File.

29. On August 13, 2007, Plaintiff complained that he needed athlete's foot cream and hydrocortisone cream. Plaintiff was given tolfinate and hydrocortisone cream. *See* DE #55-4, pp. 8-9/31, Exhibit 2, Jail Medical File.

30. Plaintiff complained on August 18, 2007, that he was still experiencing lower back pain

and his medication was changed to naproxen. *See* DE #55-4, pp. 10-11/31, Exhibit 2, Jail Medical File.

31. Plaintiff complained on August 27, 2007, that the naproxen was not working. The nurse noted that Plaintiff's chart would be reviewed with Dr. Stewart for medications. *See* DE #55-4, pp. 12-13/31, Exhibit 2, Jail Medical File.

32. Plaintiff next requested salt for his teeth and hydrocortisone cream for his blanket rash. Plaintiff was given robaxin for seven days beginning September 4, 2007. *See* DE #55-4, pp. 14-15/31, Exhibit 2, Jail Medical File.

33. Plaintiff complained on September 7, 2007, that he was not able to sleep and was given benadryl. *See* DE #55-4, pp. 16-17/31, Exhibit 2, Jail Medical File.

34. Plaintiff requested more robaxin on September 10, 2007 and stated he was still having back pain. The nurse noted that Plaintiff's medications had been refilled. *See* DE #55-4, pp. 18-19/31, Exhibit 2, Jail Medical File.

35. Plaintiff requested more hydrocortisone cream on September 13, 2007 and it was given to him. *See* DE #55-4, pp. 20-21/31, Exhibit 2, Jail Medical File.

36. Plaintiff requested robaxin and benadryl on September 25, 2007, and also complained of athlete's foot. Plaintiff was to be provided with cream when the clinic refilled their stock. *See* DE #55-4, pp. 22-23/31, Exhibit 2, Jail Medical File.

37. Plaintiff complained on September 25, 2007 and again September 27, 2007 that he was out of robaxin and was experiencing back pain. Plaintiff was given robaxin for 14 days by Defendant Lt. Oliver, R.N. *See* DE #55-4, pp. 24-27/31, Exhibit 2, Jail Medical File.

38. Plaintiff requested a shave and hair cut on October 1, 2007 (or to be released) and his

request for barbering was approved. *See* DE # 55-8, p. 9/17, Exhibit 3, Requests/Grievances.

39. Plaintiff asked on October 15, 2007, that his charges be dropped and he was informed by jail personnel that they had no jurisdiction over his charges. *See* DE # 55-8. p. 11/17, Exhibit 3, Requests/Grievances.

40. Plaintiff requested a hair cut for trial on October 28, 2007 and his request was approved. *See* Exhibit 3, Requests/Grievances.

41. Plaintiff asked on October 15, 2007, to receive medication for athlete's foot. *See* DE # 55-4, pp. 28-30/30, Exhibit 2, Jail Medical File.

42. Plaintiff complained that he had run out of medication for his back and requested robaxin. On October 16, 2007, a thirty-day supply was ordered. *See* DE #55-4, pp. 30-31/31, Exhibit 2, Jail Medical File.

43. On October 17, 2007, Plaintiff requested a hair cut and was asked by jail personnel if he had a jury trial coming up. *See* DE # 55-8, p. 12/17, Exhibit 3, Requests/Grievances.

44. On November 7, 2007, Plaintiff complained that his mail sent to Little Rock did not appear on the mail log. Jail personnel stated that they would check into the matter. *See* DE # 55-8, p. 14/17, Exhibit 3, Requests/Grievances.

45. On November 14, 2007, Plaintiff was sentenced to 120 months on sexual assault in the second degree after negotiating a guilty plea. *See* DE # 55-2, pp. 13-14/19, Exhibit 1, Arrest/Booking.

46. Plaintiff requested on November 15, 2007, to keep his mat all day due to pain in his left leg. Sgt. Snyder (not a Defendant) noted that Plaintiff must provide civilian documentation for need of daytime use of mat. *See* DE# 55-5, pp. 2-3/30, Exhibit 2, Jail Medical File.

47. On November 16, 2007, Plaintiff requested a copy of the mail log and it was provided to him. *See* DE # 55-8, p. 6/17, Exhibit 3, Requests/Grievances.

48. Plaintiff stated on November 19, 2007, that he needed his robaxin due to pain in his left leg and also requested his mat for day-time use.  Nurse Snyder again responded that Plaintiff must provide civilian documentation in order to use the mat during the daytime. *See* DE# 55-5, pp.4- 5/30, Exhibit 2, Jail Medical File.

49.  Plaintiff requested medical care on November 20, 2007, stating that he had problems with his leg that he did not have prior to incarceration and that he needed his mat in the daytime. Plaintiff stated, "you will need to take me to a doctor. I am diabetic and requesting use of daytime mat." Sgt. Snyder responded, "Inmate family may make financial arrangements to them. The facility will transport inmate to phys. after this if inmates dr. requests a daytime mat may be used." *See* DE# 55-5, pp. 6-7/30, Exhibit 2, Jail Medical File.

50. Plaintiff requested athlete's foot cream on November 26, 2007 and was given tolfinate cream to be used twice per day. *See* DE# 55-5, pp. 8-9/30, Exhibit 2, Jail Medical File.

51. Plaintiff complained that he needed a benadryl refill on December 5, 2007 and also requested his mat for all day use due to lower and mid-back pain. Nurse Snyder noted that Plaintiff could use athlete's foot cream and over-the-counter ibuprofen as needed. The nurse also noted that Plaintiff would see Dr. Stewart on [December 6th] per Nurse Oliver. *See* DE# 55-5, pp. 10-11/30, Exhibit 2, Jail Medical File.

52.  Dr. Stewart examined Plaintiff on December 6, 2007 and ordered, among other things, daily morning blood pressure checks for five days and HCTZ at 25 mg., [a diuretic hypertension medication, hydrochlorothiazide] to start if ">90 mm or more". *See* DE# 55-5, p. 12/30, Exhibit 2,

Jail Medical File.

53. On December 10, 2007, Plaintiff requested to keep his mat all day due to broken blood vessels caused by sitting and lying on concrete from 6:00 a.m. to 7:00 p.m. Sgt. Snyder responded that Plaintiff must provide civilian documentation for use of a daytime mat. *See* DE# 55-5, pp. 13-14/30, Exhibit 2, Jail Medical File.

54. Plaintiff requested a refill of Robaxin on December 10, 2007. The response on December 12th noted presence of edema and that he was scheduled to see Dr. Stewart the following morning. *See* DE# 55-5, p. 15-16/30, Exhibit 2, Jail Medical File.

55. On December 13, 2007, Plaintiff was seen again by Dr. Stewart, who noted that Plaintiff could take over-the-counter medications for his ailments. *See* DE# 55-5, p. 21/30, Exhibit 2, Jail Medical File.

56. Plaintiff requested a refill of benadryl on December 14, 2007, noting that he still had a rash and trouble sleeping. The nurse noted that Plaintiff had athlete's foot and could use athletes's foot cream for rash and ibuprofen as needed. *See* DE# 55-5, pp.22-23/30, Exhibit 2, Jail Medical File.

57. Plaintiff complained on December 15, 2007, that he had witnessed another inmate "sucking on his arm where his staph infection boil is. He does not keep a band-aid on this." Plaintiff complained that this inmate was a health hazard to other inmates. Jail personnel responded, "I will look into this matter." *See* DE# 55-8, p. 17/17, Exhibit 3, Requests/Grievances.

58. Plaintiff complained on December 15, 2007, that he needed a daytime mat and was again told by the nurse that his family must make financial arrangements for him to see a doctor. *See* DE# 55-5, pp. 24-25/30, Exhibit 2, Jail Medical File.

59. Plaintiff requested outside medical treatment on December 15, 2007 and Sgt. Snyder responded, "Inmate may use medical request form #12541." *See* DE# 55-5, pp.26-27/30, Exhibit 2, Jail Medical File.

60. On December 17, 2007, Plaintiff requested to see a civilian doctor and the nurse responded, "Inmate family may make financial arrangements for inmate to see [doctor], then the facility will schedule an [appointment] for inmate." *See* DE# 55-5, pp. 28-29/30, Exhibit 2, Jail Medical File.

61. Plaintiff submitted another "medical request form" on December 18, 2007 and stated "you are currently denying me medical treatment for medical problems I have obtained since my incarceration. I am requesting use of daytime mat." The nurse responded that Plaintiff must provide civilian documentation for daytime use of mat. *See* DE## 55-5, p. 30/30, # 55-6, p. 1/30, Exhibit 2, Jail Medical File.

62. Nurse Snyder forwarded a "health services request" to the Arkansas Department of Correction on January 3, 2008, from Plaintiff (in his status as a new commitment to the Arkansas Department of Correction, on the waiting list for transport as of November 14, 2007), complaining that he was a diabetic and requesting double trays because he had lost 107 pounds since his incarceration. *See* DE # 55-5, p. 1/30. A second form, also dated January 3rd and requesting double trays, claimed he had only lost 98 pounds since his incarceration. *See* DE# 55-6, p. 2/30, Exhibit 2, Jail Medical File.

63. Nurse Snyder forwarded another request to the Arkansas Department of Correction on January 3, 2008. In it Plaintiff requested, "a shave and haircut. They deny inmates the right to shave unless you are a black inmate." *See* DE# 55-6, p. 3/30, Exhibit 2, Jail Medical File.

64. Plaintiff's blood sugar was monitored and logged during his incarceration and his blood pressure was also monitored. DE# 55-6, pp. 15-25/30, Exhibit 2, Jail Medical File. Plaintiff's medication logs indicate he received naproxen, ibuprofen, robaxin, benadryl, and hydrochlorothiazide. *See* DE# 55-6, p. 26-30/30 and DE#55-7, 1-19/23, Exhibit 2, Jail Medical File.

72. Plaintiff was transferred from the custody of the Faulkner County Detention Center to the Arkansas Department of Correction officials on January 11, 2008. *See* DE # 55-2, p. 1/19, Exhibit 1, Arrest/Booking.

### III. Analysis

**A. Deliberate Indifference Claims**

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)(citation omitted). "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment as applied to the States by the Fourteenth Amendment." *Hartsfield v. Colburn*, 491 F.3d 394, 396 (8th Cir. 2007). In this circuit it is settled law that deliberate indifference is the appropriate standard of culpability for all claims that detention center officials have denied inmates, whether in pretrial or convicted status, adequate medical care. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious

medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). "For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 498 (8th Cir. 2008).

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997)(per curiam)(internal quotation and citation omitted). The Eighth Circuit has further made it clear that a delay in medical treatment is actionable only if a prisoner presents "verifying medical evidence" that the defendants "ignored an acute or escalating situation or that delays adversely affected the prognosis."[2]

The evidence submitted by the Defendants shows that there are no genuine issues of material

---

[2] In other words, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay." *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997). *See also Jackson v. Hallazgo*, 30 Fed. Appx. 668 (8th Cir. Mar. 6, 2002)(unpub. per curiam)(citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997))("[a]n inmate's failure to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment precludes a claim of deliberate indifference to medical needs"); *O'Neal v. White*, 221 F.3d 1343 (8th Cir. July 12, 2000)(unpub. per curiam)(citing *Crowley*, 109 F.3d at 502)(concluding that plaintiff's "failure to submit verifying medical evidence to show a detrimental effect from any delay in tests, surgery, or alternative treatments was fatal to his Eighth Amendment claim").

fact as to whether they exhibited deliberate indifference to Plaintiff's serious medical needs. To the contrary, it appears from the inmate request forms and medical records produced that Plaintiff received a great deal of medical care, with medication and nurse or physician visits provided an average of at least once a week during the ten months he was detained in Faulkner county. Plaintiff has not responded to the pending Motion and has produced no "evidence to support his claim that the treatment provided . . . [for his various medical complaints] was constitutionally inadequate." *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007). Defendants have provided the Court with comprehensive medical records which indicate that treatment was provided for Plaintiff's many complaints. The undisputed facts demonstrate that Plaintiff's conditions were addressed by the Defendants, and treatment provided. The medical record demonstrates that Plaintiff was seen regularly by the medical staff for his complaints. Plaintiff has not opposed this motion and has therefore failed to demonstrate the existence of any genuine dispute regarding these facts. The Defendants are entitled to summary judgment on this claim.

### B. Denial of Access to Courts Claim

The Court will construe Plaintiff's claims related to the alleged "tampering" of his mail (the failure to mail a letter to the American Civil Liberties Union in New York City) and denial of access to a law library, as access to courts claims, in the absence of any further explanation from Plaintiff regarding the nature or specifics of the incidents. Both claims require "actual injury to the plaintiff, such as the dismissal of an otherwise meritorious legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Despite having had opportunity to provide support for his claims, in his amended complaints and now, in a response to the instant motion, Plaintiff has offered no facts showing any actual injury. The Defendants are entitled to summary judgment on these points as well.

### C. Failure to Protect Claim

Similarly, Plaintiff offered only a bare allegation in his first Complaint that "while in protective custody had my life threatened and was assaulted (not properly protected)." *See* docket entry #2. Despite having been twice specifically directed by the Court how to amend his claim to properly state facts in support of this claim (docket entries ## 8,17), Plaintiff has failed to support this vague accusation with names, a date, a time, or any other information that could substantiate his allegations. Defendants are entitled to judgment as a matter of law on the claim of failure to protect.

### D. Conditions of Confinement Claims

With regard to his allegations related to the conditions at the jail, Plaintiff has similarly failed to support his contentions with facts showing how these Defendants were responsible for those conditions and, more importantly, failed to state any injury or harm he sustained as a result. He has described moldy shower facilities and fellow inmates who suffered from staph infections, but has not claimed that he was personally injured himself as a result of these conditions.

To the extent that Plaintiff stated an injury based on his claim that the inadequacy of the jail diet resulted in a significant weight loss, the Defendants have responded with Plaintiff's intake and medical records. At the time of his arrest on March 26, 2007, Plaintiff weighed 300 lbs. *See* DE #55-2, pp. 2/19, 5/19. An inmate progress note signed by Defendant Chambers on April 3, 2007 shows Plaintiff's weight as 307 ½ lbs. *See* DE #55-3, p. 4/30. On June 13th, Plaintiff's weight was 293 lbs., (DE # 55-3, p. 22/30) and on August 9th, his progress notes reflect 285 lbs (DE # 55-4, p. 7/31). By December 6, 2007, Plaintiff's weight was back up to 288 lbs. *See* DE # 55-5, p. 12/30. None of the doctor's notes indicate medical concern for any weight loss.

On January 3, 2008, Plaintiff complained directly to his new custodian, the Arkansas

Department of Correction, that he was "diabetic/without insulin. I have lost 98 lbs. since my incarceration." *See* DE # 55-5, p. 1/30. On a second request form to the Arkansas Department of Correction bearing that same date, Plaintiff claimed he had "lost 107 lbs. since my incarceration." *See* DE # 55-6, p. 2/30. However, the Faulkner County Sheriff's Office Release form, dated January 11, 2008 and prepared for his release to the custody of the Arkansas Department of Correction, shows Plaintiff's weight as 320 lbs. *See* DE # 55-2, p. 1/19.

While certainly courts should neither weigh evidence nor make credibility determinations when ruling on a motion for summary judgment, *Nyari v. Napolitano*, 562 F. 3d 916 (8th Cir. 2009), the plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *See Wilson v. Myers*, 823 F.2d 253, 256 (8th Cir.1987)( "Summary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact.")(citing *Weight Watchers of Quebec, Ltd. v. Weight Watchers Int'l, Inc.,* 398 F.Supp. 1047, 1055 (E.D.N.Y.1975)). Plaintiff has offered no evidence that these claims, or, in fact, any of his claims, have any basis in fact.

### E.  Unreasonable Bond Claims

Lastly, to the extent that Plaintiff's original Complaint (docket entry #2) raised an issue related to the amount of his pre-trial release bond, which he states was set at $500,000.00, the Defendants are entitled to summary judgment on this point as well. None of these Defendants were responsible for the Plaintiff's bond amount, and are entitled to qualified immunity for their actions in carrying out the orders of the judge who set this bond. Furthermore, Plaintiff's claim to pretrial bail was moot once he was convicted. *Murphy v. Hunt*, 455 U.S. 478, 481 (1982).

For all these reasons,

### IV. Conclusion

IT IS THEREFORE RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (docket entry #53) be GRANTED;

2. Plaintiff's claims be dismissed with prejudice; and

3. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations would not be taken in good faith.

DATED this   22   day of May, 2009.

_____
UNITED STATES MAGISTRATE JUDGE